Clarence DEMPSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–83–043–CR.

Court of Appeals of Texas, Beaumont.

Sept. 21, 1983.

Rehearing Denied Oct. 13, 1983.

Discretionary Review Refused Feb. 29, 1984.

Rodney D. Conerly, Port Neches, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Clarence Dempsey appeals from conviction for possession of a controlled substance (Pentazocine), with intent to deliver, in an amount less than two hundred (200) grams. The Court assessed punishment at six years confinement.

Appellant asserts five grounds of error. The first four grounds of error challenge the sufficiency of evidence to sustain conviction and to prove intent of appellant; also challenge is made to sufficiency of evidence to prove possession and to negate an hypothesis concerning possible guilt of another person other than appellant.

Detective Ray E. Beck testified that at about 3 p.m., December 1, 1981, he was at a bank parking lot two blocks to the north of Forsythe Street in Beaumont. He was there to do narcotics surveillance work in the Forsythe-Trinity Streets area. Something got his attention. He saw a man wearing a brown suit and brown hat. The man was standing on the sidewalk of Forsythe Street near a large garbage dumpster. On at least two occasions the man would leave his position near the dumpster and meet cars on the street. The detective could see the man lean into a car, reach inside, and finally walk back over to the sidewalk. Each time he left any of the cars he would walk back to the east side of the dumpster, specifically to the pickup slot on the east side. Each time he saw the

man reach toward that slot. "What he was doing there, you know, I can only assume," Beck injected. Beck saw only Dempsey go to or near the dumpster. Beck also saw Dempsey reach into the arm of the dumpster three times.

Finally, Detective Beck made some sort of contact with Policeman W.C. Kittell who was making a routine patrol in the area. The detective asked Kittell to identify the man and also to check something. Beck confirmed that the man Kittell approached was the same man Beck had seen standing near the dumpster. Beck next asked the officer—apparently by radio—to check the arm slot of the dumpster. Kittell identified the man as appellant and found in the dumpster slot a match box containing twenty-four sets of pink and blue pills. At the time of arrest, appellant was about six to ten feet away from the dumpster—more than an arm's reach—Kittell said. Some of these pills were identified as Pentazocine (also known as Talwin). No weight was determined. There were twenty-four of that particular tablet and each weighed less than one-half gram.

Detective Beck stated he was on his surveillance mission a total of approximately thirty minutes. We observe the following during cross-examination:

"Q. And this is an area you have testified where you make narcotics and prostitution arrests ...?

"A. That is correct.

"Q. Would it be safe to say that ... these particular drugs are common in that area?

"A. Yes, sir, that is true.

   *     *     *     *     *     *

"Q. ... Would it be safe to say that there could be more than one person who frequents that area who could have placed that particular drug in that dumpster?

"A. Someone else could have, yes."

■ In cases such as this, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and such affirmative link is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Waldon v. State,* 579 S.W.2d 499 (Tex.Cr.App.1979). In our case, the evidence—direct and circumstantial—affirmatively links the accused to the contraband. By eyewitness testimony it ties appellant to the dumpster arm slot at a time when the contraband was present. During the time of the surveillance no other person approached the dumpster and no other person except appellant reached toward the arm slot.

As to the direct evidence in the case, we follow the holdings and the reasonings in *Fernandez v. State,* 564 S.W.2d 771 (Tex. Cr.App.1978), and *Banks v. State,* 510 S.W.2d 592 (Tex.Cr.App.1974). In *Banks, supra,* the Court defined the standard for reviewing the sufficiency of direct evidence, writing:

"In reviewing the sufficiency of the evidence to support the conviction, we must view the evidence in the light most favorable to the verdict. In doing so, the verdict will be sustained if there is any evidence which, if believed, shows the guilt of the accused."

■ As to the nature and quality of the circumstantial evidence in this case, we test the same using a different standard whereby a conviction based on circumstantial evidence can be sustained only if the circumstantial evidence excludes every other reasonable hypothesis except that of appellant's guilt. *Moore v. State,* 640 S.W.2d 300 (Tex.Cr.App.1982); *Autry v. State,* 626 S.W.2d 758 (Tex.Cr.App.1982). *See Sewell v. State,* 578 S.W.2d 131 (Tex.Cr.App.1979); *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr. App.1983).

■ Of course every circumstantial evidence case must necessarily be measured and tested on its own facts to determine the sufficiency of the evidence to support the conviction. *Earnhart v. State,* 575 S.W.2d 551, 554 (Tex.Cr.App.1979); *Stogs-*

*dill v. State,* 552 S.W.2d 481 (Tex.Cr.App. 1977). And the appellate or reviewing court has an affirmative duty of seeing to it that no one is convicted of a crime except upon proof beyond a reasonable doubt, and if prosecution is based on circumstantial evidence, then such evidence and proof must exclude all other hypotheses except guilt as to every element of the offense charged. *Easley v. State,* 529 S.W.2d 522 (Tex.Cr.App.1975).

The rule on an appellate court's reviewing of evidence in a circumstantial evidence case is in *Sewell v. State, supra,* 578 S.W.2d at 135, as follows:

"The general rule for reviewing the sufficiency of evidence is that it will be viewed in the light most favorable to the jury verdict. *Bowers v. State,* 570 S.W.2d 929, 932 (Tex.Cr.App.1978). However, this Court has applied a different test when the verdict is based on circumstantial evidence; the evidence is insufficient if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977). As was stated in *Culmore v. State,* 447 S.W.2d 915 (Tex. Cr.App.1969):

" 'In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review evidence in the light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged.' "

The rule stated in *Sewell, supra,* is now well established. *Suff v. State,* 531 S.W.2d 814 (Tex.Cr.App.1976); *Davis v. State,* 516 S.W.2d 157 (Tex.Cr.App.1974).

We have reviewed the circumstantial evidence in accordance with the above standards. The circumstantial evidence is adequate to sustain verdict.

■ A separate attack is made on sufficiency of evidence to sustain conviction involving the element of intent of the appellant in connection with the offense. The record shows that twenty-four sets of these dual pills were found in the match box. The place where the match box was found would definitely indicate the contraband was not possessed for the personal use of the appellant. The dual pills were commonly used dope in the area or surrounding area involved, according to Detective Beck who had had considerable experience in the narcotics division. The twenty-four sets of dual pills would certainly seem to be an unusually large amount for one person's personal consumption. Also there was the uncontradicted evidence that the appellant was seen going back and forth between the dumpster—reaching into the arm slot—and four automobiles. We think a trial jury could reasonably infer that these actions by appellant had to do with delivery of the contraband and with intent to deliver the contraband to the person or persons in the cars. Also, as we review the evidence consistent with the circumstantial evidence rules and standards set out in the cases above, we find sufficient evidence to support the conviction on the question of intent of appellant.

Ground of error number five asserts:

"The sentence pronounced by the trial judge was in excess of the maximum punishment permitted by law."

Appellant makes no challenge against the court's charge in this case. No challenge is made to the verdict of the jury which read as follows:

"We, the jury, find the defendant guilty of the offense of possession of a Controlled Substance with intent to Deliver, as alleged in the indictment."

The indictment charged:

"Clarence Dempsey ... did then and there intentionally and knowingly possess with intent to deliver a controlled substance listed in Penalty Group III of the Texas Controlled Substances Act, namely: Pentazocine, in a quantity less

than two hundred (200) grams, against the peace and dignity of the State."

The judgment recites the offense as "possession of a controlled substance, namely: pentazocine." That is to say, the judgment describes the felony offense as "possession." The complete verdict of the jury, however, is recited in the judgment but in the decretal part of the judgment the Court adjudged the appellant guilty of the offense of possession of a controlled substance but then recites "as charged in the indictment" and punishes the appellant by confinement in the Texas Department of Corrections for a term of six years. The Court announced sentence against the appellant as follows:

" 'It is the order of the Court that the Defendant, Clarence Dempsey who has been adjudged to be guilty of the offense of possession of a controlled substance, namely: pentazocine, a felony, and whose punishment has been assessed at confinement in the Texas Department of Corrections for a term of six (6) years be delivered by the Sheriff of Jefferson County ....' "

Inconsistencies exist in the judgment itself, in parts of the judgment and in the formal sentencing recitations. Appellant takes the position and strongly urges that the appellant was decreed guilty only of a misdemeanor, citing Texas Controlled Substances Act, *Art. 4476–15, § 4.042* (Vernon Supp.1982–1983). However, in the transcript of the reporter's notes in the statement of facts setting out the assessment of punishment proceedings held on January 17, 1983, we find the following proceeding before the bench:

"THE COURT: Cause No. 40,868, State of Texas vs. Clarence Dempsey.

"Let the record reflect in this cause number the Defendant is present before the Court along with his attorney, Mr. Gilmore. The Defendant was previously found guilty by a jury of the offense of possession of a controlled substance with intent to deliver and he elected for the Court to assess punishment. The Court, having reviewed the Pre-Sentence Report and the jury having found the Defendant guilty, the Court hereby assesses the De-

fendant's punishment at confinement in the Texas Department of Corrections for a term of six years.

"Any legal reason why sentence should not be imposed?

"MR. GILMORE: No, Your Honor.

"THE COURT: The Defendant is hereby sentenced to six years in the Texas Department of Corrections. He will be given credit for all jail time served."

■ In view of the indictment, the complete recitation of the actual verdict of the jury in the judgment and in view of the actual bench proceeding before the trial judge at formal sentencing, it appears obvious that a clerical error was made. This Court may reform the judgment since it has all the evidence and record and data to do so. *Knight v. State*, 581 S.W.2d 692 (Tex.Cr.App.1979); *Harris v. State*, 630 S.W.2d 774 (Tex.App.—Houston [1st Dist.] 1982, no writ). Accordingly, all of the pertinent parts of the judgment are hereby reformed to state and read, in substance:

"It is therefore Considered, Ordered, Adjudged and Decreed by the Court that the Defendant is guilty of the offense of possession of a controlled substance, namely: Pentazocine, with intent to deliver as alleged in the indictment, being a felony."

As reformed and corrected, the judgment and sentence are Affirmed.